UNITED STATES OF AMERICA

IN THE DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RACHAEL WHIPPLE,

       Plaintiff,                                         Case No. 22-cv-00318

-v-

GRACE HEALTH, INC., a
Michigan Corporation

       Defendant.
_____/

JOEY S. NISKAR (P55480)
The Niskar Law Firm, PLLC
Attorney for Plaintiff
P.O. Box 252917
West Bloomfield, MI  48325
(248) 702-6262
E-mail:  joey@wrongfullydischarged.com
_____/

# COMPLAINT AND DEMAND FOR JURY TRIAL

    NOW COMES the plaintiff, Rachael Whipple ("plaintiff"), by and through her counsel, The Niskar Law Firm, PLLC, and for her complaint against the defendant, Grace Health, Inc. ("defendant"), respectfully states unto this Honorable Court as follows:

## A. Statement of Jurisdiction and Venue

1. Plaintiff is a resident of the County of Calhoun, State of Michigan.

2. Defendant is a Michigan corporation which has its principal place of business located in, and which regularly conducts and transacts business within the City of Battle Creek, County of Calhoun, State of Michigan, and thus within the geographic region constituting the Western District of Michigan, Southern Division.

3. The pertinent events giving rise to this cause of action occurred in whole or substantial part in the County of Calhoun, State of Michigan, and thus inside the Western District of Michigan, Southern Division.

4. As defendant regularly transacts and conducts business in, and all pertinent events giving rise to this action occurred inside the Western District of Michigan, Southern Division, this Honorable Court possesses personal jurisdiction over defendant, and venue is proper pursuant to 28 USC § 1391.

5. Plaintiff alleges violations of the Americans With Disabilities Act, 42 USC § 12101, *et seq.* (hereafter the "ADA"), and Section 504 of the Rehabilitation Act of 1973, 29 USC § 794, *et seq.* ("the Rehabilitation Act"). Therefore, this Honorable Court possesses subject matter jurisdiction pursuant to 28 USC § 1331 and 42 USC § 12117(a) [adopting by reference 42 USC § 2000e-5(f)(3)]. This Honorable Court possesses supplemental jurisdiction over plaintiff's state law claims pursuant to 28 USC § 1367.

6. Plaintiff has complied with all procedural prerequisites to filing this action, including the timely filing of a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), and the timely filing of this action with the Court upon her receipt of notice of the right to sue from the EEOC.

## B.  Factual Allegations

Plaintiff incorporates all prior averments, as if fully set forth herein.

7. On or about November 11, 2019, defendant hired plaintiff to work at its Battle Creek, Michigan, healthcare facility as a dental assistant.

8. Due to health-related issues, plaintiff missed work on November 26, 2019 and December 31, 2019, and had to leave work early on December 9, 2019.

9. On January 3, 2020, defendant issued a warning to plaintiff regarding her aforementioned absences and early departure from work.

10. Thereafter, plaintiff incurred additional health related hours off from work.

11. On August 14, 2020, defendant issued a written warning relative to plaintiff's time off from work, in which defendant asserted that any additional unplanned absences from work would result in discipline up to and including plaintiff's termination.

12. The next day, August 15, 2020, plaintiff suffered an embolic stroke to the left basal ganglia of her brain causing death to brain tissue, and severe weakness to the right side of her body.

13. Plaintiff was admitted to a hospital on August 16, 2020.  On that day, she notified defendant of her stroke, and her need for a leave of absence in order to undergo rehabilitation.

14. Plaintiff was discharged from the hospital on or about August 18, 2020, and at that time was experiencing significant impairment of her ability to walk, and significant impairment of functioning to and use of her right arm and hand.

15. Plaintiff notified defendant's human resource department that she would need a leave of absence due to her stroke and her need to undergo rehabilitation, that she had a follow-up appointment with her primary care provider on August 21, 2020, and that she would at that time have a better understanding as to the duration of her needed leave.

16. Plaintiff had her follow-up appointment with her primary health care provider, Heather

   Kidder, FNP, on August 21, 2020 at the defendant, Grace Health, Inc. Nurse Practitioner Kidder completed a health care provider statement for plaintiff's short-term disability application, which was delivered to and received by defendant's human resource department. Nurse Practitioner Kidder's statement disclosed that plaintiff had suffered a stroke and resulting right-sided weakness causing a loss of right arm and shoulder functional capacity, and confirmed that plaintiff would needed a leave of absence for 1-3 months from August 16, 2020 (or until November 16, 2020 at the latest). Nurse Practitioner Kidder's statement confirmed that plaintiff would be able to return to her job full time within that 1-3 month period.

17. Plaintiff had a subsequent follow-up appointment with Nurse Practitioner Kidder on September 4, 2020 at the Grace Health, Inc. facility in Battle Creek, Michigan. Immediately after that appointment, plaintiff went to defendant's human resource department located in the same facility, and met with a human resource representative to provide an update, and again confirmed that she would need a leave of absence of 1-3 months in order to undergo rehabilitation for her stroke. In that meeting, the human resource representative presented plaintiff with the written warning dated August 14, 2020 stating that any further absences would subject plaintiff to discipline, including termination.

18. Plaintiff thereafter continued her treatment, which included physical rehabilitation and follow-up visits with Nurse Practitioner Kidder.

19. Plaintiff had a follow-up visit with Nurse Practitioner Kidder on September 18, 2020, at which time the latter indicated that there was a possibility that plaintiff could return to her work earlier than anticipated in either late October or early November of 2020, depending upon the progress of plaintiff's physical rehabilitation.

20. On or about September 23, 2020, plaintiff e-mailed defendant's human resource department an update on her condition, and provided notification that there was a

      possibility that she could return to work earlier than anticipated in either late October or early November 2020, but that it was too soon for her health care provider to make that determination. The outside end-point of the requested leave did not at all change, and remained the same three months from August 16, 2020 (i.e., November 16, 2020).

21. On September 28, 2020, plaintiff again e-mailed defendant's human resource department to provide an update, and confirmed that there was still a possibility that she could return to work earlier than the outside end-point of her requested leave. The outside end-point of the requested leave did not at all change, and remained the same three months from August 16, 2020 (i.e., November 16, 2020).

22. That same day, September 28, 2020, defendant terminated plaintiff's employment and documented the termination, with the listed reason being "poor attendance and dependability. Lacked motivation."

23. The following day, September 29, 2020, plaintiff spoke on the telephone with defendant's Human Resource Director, Tricia Simunovic. Ms. Simunovic notified plaintiff that her employment was terminated because, according to Ms. Simunovic, defendant could not hold plaintiff's job open for her.

24. During the September 29, 2020 telephone call, Ms. Simunovic told plaintiff that she could re-apply for any open job positions with defendant once she was able to return to work.

25. In its position statement to the Equal Employment Opportunity Commission, defendant asserted that it terminated plaintiff's employment on the basis of its claim that plaintiff's requested leave accommodation was for an "indefinite" duration.

26. Plaintiff did not at any time before her termination communicate that her requested leave would exceed the original projected outside end-point of three months from August 16, 2020 (i.e., November 16, 2020).

27. Plaintiff did not at any time before her termination request any extension of her leave

beyond the original projected outside end-point of three months from August 16, 2020 (i.e., November 16, 2020).

28. On October 29, 2020, Nurse Practitioner Kidder cleared plaintiff to return to work on November 2, 2020, and without any restrictions.

29. The date upon which plaintiff was cleared to return to work was within the period of her requested leave.

30. Defendant posted and advertised a job opening for plaintiff's dental assistant job position.

31. Upon being cleared to return to work, plaintiff requested that defendant reinstate her into her dental assistant job position. At the time plaintiff requested reinstatement, her dental assistant job position was still open and posted.

32. Defendant refused to reinstate plaintiff into her dental assistant job position, or an equivalent job position, and failed to engage in good faith with plaintiff in any interactive process to determine which job positions were available, and/or to place plaintiff in an available job position.

33. Defendant told plaintiff that she was required to instead formally apply for any posted positions.

34. Plaintiff formally applied for the posted and open dental assistant position.

35. Defendant rejected and refused to hire plaintiff for the posted, open dental assistant position.

36. As more fully set forth below, defendant failed and/or refused to provide plaintiff with a reasonable accommodation (including her requested leave of 1-3 months), terminated her employment due to the leave time plaintiff took and needed as an accommodation, refused to timely reinstate plaintiff into her job position, and refused to re-hire plaintiff in violation of the ADA, the Rehabilitation Act and the Michigan Persons with Disabilities Civil Rights Act, MCL § 37.1101, *et seq*. ("PWDCRA"), and/or in retaliation for exercising rights under those acts.

## C.  Count I – Violations of the Americans With Disabilities Act, 42 USC § 12101, *et seq.* ("ADA") – Disability Discrimination and Retaliation

Plaintiff incorporates all prior averments, as if fully set forth herein.

37. Plaintiff was at all pertinent times a qualified individual with a disability within the meaning of 42 USC § 12111(8).

38. Defendant was an employer of plaintiff within the meaning of 42 USC § 12111(5), and was at all pertinent times subject to the prohibitions against discrimination on the basis of disability and retaliation contained in the ADA.

39. Plaintiff was qualified for the job she held with defendant.

40. Plaintiff could perform the essential functions of her job either with or without reasonable accommodation.

41. Plaintiff was terminated from her job, refused reinstatement and refused re-hire, and as such suffered one or more adverse employment actions by defendant.

42. Defendant knew of plaintiff's need for reasonable accommodation prior to terminating her employment, refusing her reinstatement and refusing her re-hire.

43. Defendant failed and/or refused to engage in the mandatory interactive process to identify the nature and extent of plaintiff's impairment(s), her need for accommodation(s), the nature and extent of accommodation(s) needed and/or the availability and feasibility of reasonable accommodation(s) to enable her to maintain and perform the essential functions of her job.

44. Defendant failed and/or refused to provide, afford and/or allow plaintiff the use of reasonable accommodation(s) to maintain and perform her job, specifically including but not necessarily limited to providing and/or allowing plaintiff a temporary leave of absence.

45. The defendant's failure to provide, afford and/or allow plaintiff reasonable accommodation(s) led to plaintiff's termination.

46. Defendant violated the ADA, and is liable to plaintiff under the ADA by:

    a. taking the aforementioned adverse employment action(s) against plaintiff because of her disability;
    b. failing and/or refusing to afford and/or allow plaintiff reasonable accommodation(s) which would have enabled her to maintain and perform the essential functions of the job;
    c. terminating plaintiff's employment because of her disability and/or as a result of its failure to afford plaintiff reasonable accommodation(s)
    d. failing and/or refusing to timely reinstate plaintiff into her job position following completion of her ADA-protected leave;
    e. failing and/or refusing to re-hire plaintiff because of her disability, because of her record of having a disability, and/or in retaliation for engaging in activity protected by the ADA;
    f. failing and/or refusing to timely and properly engage with plaintiff in the interactive process required by the ADA;
    g. terminating plaintiff in retaliation for exercising rights under the ADA; and
    h. Alternatively, regarding plaintiff as being disabled, and terminating her, refusing to reinstate her and/or refusing to re-hire her on the basis of such in violation of the ADA.

47. Defendant's violations of the ADA were done with malice and/or reckless indifference plaintiff's rights, thereby entitling plaintiff to punitive damages, in addition to all other damages available at law.

48. As a direct and proximate result of the defendant's violations of the ADA and the regulations promulgated thereunder, plaintiff has incurred all damages available at law, both past, present and into the future, specifically including all damages provided for in 42 USC § 12117(a), 42 USC § 2000e-5 and 42 USC § 1981a, including but not limited to lost wages, lost overtime wages, the value of lost employment benefits, loss of other compensation denied and lost, consequential damages, non-economic damages including emotional distress and/or mental anguish damages, any incurred medical expenses, punitive damages, interest, costs of litigation, and attorney fees.  Plaintiff hereby seeks recovery of, and is entitled to recovery of, all such damages incurred, and those that will be incurred in the future (including front-pay).

49. In the event the Court deems reinstatement to be a remedy more appropriate than front-pay for future damages, then plaintiff, in the alternative, hereby seeks an injunctive order

compelling defendant to reinstate plaintiff to her former position, compelling defendant to retroactively restore plaintiff's seniority rights and/or opportunities for promotion, declaring that the defendant violated the ADA in the aforementioned ways, enjoining defendant from further violations of the ADA against plaintiff and others, enjoining defendant from taking any adverse employment action against plaintiff in retaliation for exercising her rights under the ADA, and enjoining defendant from taking any adverse employment action against plaintiff except upon a showing of just and good cause by clear and convincing evidence. Even if the Court orders such reinstatement, plaintiff nevertheless is entitled to recover, and hereby seeks recovery of all other damages listed in this complaint, including back-pay, non-economic damages, the value of lost benefits, consequential damages, the costs of any medical care, attorney fees, punitive damages, costs, interest, etc.

### D. Count II – Violation(s) of Section 504 of the Rehabilitation Act of 1973, 29 USC § 794, *et seq*. ("the Rehabilitation Act")

Plaintiff incorporates all prior averments, as if fully set forth herein.

50. At all pertinent times, plaintiff was an "otherwise qualified individual with a disability" as defined and contemplated by the Rehabilitation Act, 29 USC § 794(a).

51. At all pertinent times, defendant was a Federally Qualified Health Center which received federal funding from the Health Center Program of the United States Department of Health & Human Services, Health Resources & Services Administration, and as such was at all pertinent times was a program or activity as defined and contemplated by the Rehabilitation Act, 29 USC § 794(a)-(b).

52. At all pertinent times, defendant was subject to the requirements and prohibitions contained within the Rehabilitation Act, specifically including the prohibition against exclusion from participation in the program or activity, denial of the benefits of the

program or activity, and/or discrimination because of disability.

53. Defendant failed and/or refused to provide plaintiff with a reasonable accommodation (including her requested leave of 1-3 months), terminated her employment due to the leave time plaintiff took and needed as an accommodation, failed to timely reinstate plaintiff into her job position, and refused to re-hire plaintiff.

54. Defendant violated the Rehabilitation Act, and is liable to plaintiff under the Rehabilitation Act by:

   a. taking the aforementioned adverse employment action(s) against plaintiff solely because of her disability;
   b. failing and/or refusing to afford and/or allow plaintiff reasonable accommodation(s) which would have enabled her to maintain and perform the essential functions of the job;
   c. terminating plaintiff's employment solely because of her disability and/or as a result of its failure to afford plaintiff reasonable accommodation(s)
   d. failing and/or refusing to timely reinstate plaintiff into her job position following completion of her protected leave;
   e. failing and/or refusing to re-hire plaintiff solely because of her disability, because of her record of having a disability, and/or in retaliation for engaging in activity protected by the Rehabilitation Act;
   f. failing and/or refusing to timely and properly engage with plaintiff in the interactive process required by the Rehabilitation Act;
   g. terminating plaintiff for exercising rights under the Rehabilitation Act; and
   h. Alternatively, regarding plaintiff as being disabled, and terminating her, refusing to reinstate her and/or refusing to re-hire her solely on the basis of such in violation of the Rehabilitation Act.

55. Defendant's violations of the Rehabilitation Act were done with malice and/or reckless indifference plaintiff's rights, thereby entitling plaintiff to punitive damages, in addition to all other damages available at law.

56. As a direct and proximate result of the defendant's violations of the Rehabilitation Act and the regulations promulgated thereunder, plaintiff has incurred all damages available at law, both past, present and into the future, specifically including all damages provided for in 29 USC § 794a, including but not limited to lost wages, lost overtime wages, the value of lost employment benefits, loss of other compensation denied and lost,

consequential damages, non-economic damages including emotional distress and/or mental anguish damages, any incurred medical expenses, punitive damages, interest, costs of litigation, and attorney fees.  Plaintiff hereby seeks recovery of, and is entitled to recovery of, all such damages incurred, and those that will be incurred in the future (including front-pay).

57. In the event the Court deems reinstatement to be a remedy more appropriate than front-pay for future damages, then plaintiff, in the alternative, hereby seeks an injunctive order compelling defendant to reinstate plaintiff to her former position, compelling defendant to retroactively restore plaintiff's seniority rights and/or opportunities for promotion, declaring that the defendant violated the Rehabilitation Act in the aforementioned ways, enjoining defendant from further violations of the Rehabilitation Act against plaintiff and others, enjoining defendant from taking any adverse employment action against plaintiff in retaliation for exercising her rights under the Rehabilitation Act, and enjoining defendant from taking any adverse employment action against plaintiff except upon a showing of just and good cause by clear and convincing evidence.  Even if the Court orders such reinstatement, plaintiff nevertheless is entitled to recover, and hereby seeks recovery of all other damages listed in this complaint, including back-pay, non-economic damages, the value of lost benefits, consequential damages, the costs of any medical care, attorney fees, punitive damages, costs, interest, etc.

### E.  Count III – Violation(s) of the Michigan Persons with Disabilities Civil Rights Act, MCL § 37.1101, *et seq* ("PWDCRA") – Disability Discrimination and Retaliation

Plaintiff incorporates all prior averments, as if fully set forth herein.

58. Plaintiff has at all pertinent times been a person with a disability within the meaning of MCL § 37.1103(h) whose disability qualifies as such under MCL § 37.1103(d), and an

"individual" within the meaning of MCL § 37.1202.

59. Defendant has at all pertinent times been a "person" within the definition and meaning of MCL § 37.1103(g), and an "employer" of plaintiff within the meaning of MCL § 37.1201(b), and is subject to the prohibitions against discrimination on the basis of disability and retaliation contained in the PWDCRA.

60. Plaintiff was qualified for the job she held with defendant.

61. Plaintiff was terminated from her job, refused reinstatement and refused re-hire, and as such suffered one or more adverse employment actions by defendant.

62. Defendant knew of plaintiff's need for reasonable accommodation prior to terminating her employment, refusing her reinstatement and refusing her re-hire.

63. Defendant failed and/or refused to engage in the mandatory interactive process to identify the nature and extent of plaintiff's impairment(s), her need for accommodation(s), the nature and extent of accommodation(s) needed and/or the availability and feasibility of reasonable accommodation(s) to enable her to maintain and perform the essential functions of his job.

64. Defendant failed and/or refused to provide, afford and/or allow plaintiff the use of reasonable accommodation(s) to maintain and perform her job, specifically including but not necessarily limited to, providing and/or allowing plaintiff a temporary leave of absence.

65. The defendant's failure to provide, afford and/or allow plaintiff reasonable accommodation(s) led to plaintiff's termination.

66. Defendant violated the PWDCRA, and is liable to plaintiff under the PWDCRA by:

    a. taking the aforementioned adverse employment action(s) against plaintiff because of her disability;
    b. failing and/or refusing to afford and/or allow plaintiff reasonable accommodation(s) which would have enabled her to maintain and perform the essential functions of the job;

      c.    terminating plaintiff's employment because of her disability and/or as a result of its failure to afford plaintiff reasonable accommodation(s)

      d.    failing and/or refusing to timely reinstate plaintiff into her job position following completion of her PWDCRA-protected leave;

      e.    failing and/or refusing to re-hire plaintiff because of her disability, because of her record of having a disability, and/or in retaliation for engaging in activity protected by the PWDCRA;

      f.    failing and/or refusing to properly engage with plaintiff in the interactive process required by the PWDCRA;

      g.    terminating plaintiff for exercising rights under the PWDCRA; and

      h.    Alternatively, regarding plaintiff as being disabled, and terminating her, refusing to reinstate her and/or refusing to re-hire her on the basis of such in violation of the PWDCRA.

67. Defendant's violations of the PWDCRA were done with malice and/or reckless indifference plaintiff's rights, thereby subjecting the defendant to exemplary damages, in addition to all other damages available at law.

68. As a direct and proximate result of the defendant's violations of the PWDCRA and the regulations promulgated thereunder, plaintiff has incurred all damages available at law, both past, present and into the future, specifically including all damages provided for in MCL § 37.1606, including but not limited to lost wages, lost overtime wages, the value of lost employment benefits, loss of other compensation denied and lost, consequential damages, non-economic damages including emotional distress and/or mental anguish damages, any incurred medical expenses, exemplary damages, interest, costs of litigation, and attorney fees. Plaintiff hereby seeks recovery of, and is entitled to recovery of, all such damages incurred, and those that will be incurred in the future (including front-pay).

69. In the event the Court deems reinstatement to be a remedy more appropriate than front-pay for future damages, then plaintiff, in the alternative, hereby seeks an injunctive order compelling defendant to reinstate plaintiff to her former position, compelling defendant to retroactively restore plaintiff's seniority rights and/or opportunities for promotion, declaring that the defendant violated the PWDCRA in the aforementioned ways,

enjoining defendant from further violations of the PWDCRA against plaintiff and others, enjoining defendant from taking any adverse employment action against plaintiff in retaliation for exercising her rights under the PWDCRA, and enjoining defendant from taking any adverse employment action against plaintiff except upon a showing of just and good cause by clear and convincing evidence. Even if the Court orders such reinstatement, plaintiff nevertheless is entitled to recover, and hereby seeks recovery of all other damages listed in this complaint, including back-pay, non-economic damages, the value of lost benefits, consequential damages, the costs of any medical care, attorney fees, exemplary damages, costs, interest, etc.

WHEREFORE the plaintiff respectfully requests this Honorable Court to enter judgment in her favor, and against the defendant for all compensatory damages (past and future economic and non-economic damages) available under the law, punitive damages, exemplary damages, as well as interest, and all attorney fees and costs incurred in having to investigate, pursue, litigate and prosecute plaintiff's claims pursuant to the ADA, the Rehabilitation Act, and the PWDCRA.

Respectfully submitted,

THE NISKAR LAW FIRM, PLLC

By: /s/ Joey S. Niskar
JOEY S. NISKAR (P55480)
Attorney for Plaintiff
30445 Northwestern Hwy., Ste. 250
Farmington Hills, MI 48334
(248) 702-6262

Dated: April 1, 2022      E-mail: joey@wrongfullydischarged.com

UNITED STATES OF AMERICA

IN THE DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RACHAEL WHIPPLE,

      Plaintiff,                                              Case No. 22-cv-00318

-v-

GRACE HEALTH, INC., a
Michigan Corporation

      Defendant.
_____/

JOEY S. NISKAR (P55480)
The Niskar Law Firm, PLLC
Attorney for Plaintiff
P.O. Box 252917
West Bloomfield, MI  48325
(248) 702-6262
E-mail:  joey@wrongfullydischarged.com
_____/

# **DEMAND FOR JURY TRIAL**

      NOW COMES the plaintiff, Rachael Whipple, and hereby demands a trial by jury on all issues in this case.

                                                       Respectfully submitted,

                                                         THE NISKAR LAW FIRM, PLLC

                                                        By: /s/ Joey S. Niskar
                                                        JOEY S. NISKAR (P55480)
                                                        Attorney for Plaintiff
                                                        30445 Northwestern Hwy., Ste. 250
                                                        Farmington Hills, MI  48334
                                                        (248) 702-6262

Dated:  April 1, 2022                              E-mail:  joey@wrongfullydischarged.com